IRENE W. HOLTON v. JOHN R. WALLER, *et al.,* Appellants.

**Negligence: LESSOR AND LESSEE.** Defendants leased their opera house to a troupe. The lease required the lessors to furnish light and heat and that the stage carpenter was to act under the direction of the troupe's stage manager. Back of the stage there was an opening without railing, but having a trap door which could be closed. The agent of the troupe could have seen the opening when he made the lease. It does not appear but that sufficient light to make the opening harmless was obtained. Neither does it appear that the employes of the opera house did not obey the orders of the troupe's stage manager. After the company had played on the stage for five nights, a member of it, passing from the back of the scenes upon the stage, was injured by falling into the opening. The door was not closed and had not been during the five nights. *Held,* the injury is not due to any fault of the lessors.

**Plea and Proof.** Under an allegation that one is a member of an opera company, it cannot be shown that she is merely an employe drawing a salary, in a case where the rights of a member and of a mere employe to recover damages differ.

*Appeal from Dubuque District Court.—*HON. FRED O'DONNELL, Judge.

WEDNESDAY, OCTOBER 9, 1895.

Plaintiff was a member of a theatrical troupe, known as the "Wilber Comedy Company." The defendants are the owners and managers of the opera house in the city of Dubuque, Iowa. The defendants, through their manager, let to the Wilber Comedy Company its opera house for one week in September, 1887, the lease being in writing. The company took possession of and used the house under the lease, and, during the time of its occupancy, the plaintiff was injured by falling through an opening or trapdoor in the floor of the stage, back of the scenes, while in the discharge of her duties.

as an actress. The petition shows that the defendants were negligent in the construction of the opera house, in not providing a railing or guard to prevent a person from falling in, and also in not providing sufficient light so that the opening or door could be seen. The answer is a denial, and from the verdict and judgment the defendants appealed.—*Reversed.*

*Robert W. Stewart* for appellants.

*Alphonse Mathews* and *Henderson, Hurd, Daniels & Kiesel* for appellee.

Granger, J.—The Wilber Comedy Company engaged and used the opera house for one week, and the accident occurred on the last night of the six. Its contract with the defendants was to pay two hundred and twenty-five dollars for the six nights. By the agreement, the defendants were to furnish the usual attaches on the stage, consisting of a stage carpenter, gas man, flat man, curtain man, scenery men, ushers, and some others. The amount paid as rental included the services of these men. The defendants were to furnish the lights and heat. One Seward was the stage carpenter, and was charged with providing the other "attaches on the stage," and with looking after the observance of the contract on the part of the defendant in the house. The company had a stage manager, and Seward was to act under his instructions, both as to himself and the other attaches. The hole or open space into which the plaintiff fell was at the back of the stage. It was in the floor, and was the opening leading to the property room and closets below. A door was provided for this opening, hung on hinges, so that the door, when raised to open the stairway, would rest against the rear wall of the house. This opening was a space three feet by six, the length being crosswise

of the stage; that is, from the rear to the front. The plaintiff's dressing room was on the right side of the stage, and being required to enter the stage, for her part in the play, from the left side, she attempted to cross back of the scenes, out of sight of the audience, which led past this open place in the floor, and, without observing it, she fell in. The cause of the accident assigned by the plaintiff is, as we have said, the faulty construction of the stage by leaving such an opening, and insufficient light, so that the opening could not be seen.

At the close of the evidence on the part of the plaintiff, and again at the close of the evidence on the trial, defendants moved to direct a verdict for them on the uncontroverted facts, which the court denied. It seems to us that it should have been sustained. The court instructed, in effect, that the opera house, at the time of the accident, was in the possession of the comedy company. There seems to be something of a dispute as to whether or not the plaintiff was a member of the company in the sense that she was a lessee, with the others, of the house. The pleadings admit of no other conclusion. In the petition it is stated that the defendants "let the said opera house to a theatrical troupe, known as the 'Wilber Comedy Company;' * * * that your petitioner was a member of said troupe; and that, in pursuance of her engagement as such member," etc., she was injured. Throughout the pleadings the troupe and the company are shown to be identically the same. Not overlooking the fact that the term "member of the troupe" might be used in the sense of a mere connection therewith as an actress, it still remains that if the troupe or company is omitted, as lessee of or contracting party with the defendant, then there is none. The thought in argument seems to be that Mr. Wilber was the contracting party, but such a thought in no way appears from the

petition. The pleadings will not warrant a conclusion or inference that the defendants contracted with or leased the house to any other than a company of which plaintiff was a member. We think the cause should have been tried with that fact unquestioned.

On the trial, in rebuttal, plaintiff was permitted to testify, against objections, that she had no other interest in the company than as an employe receiving a salary. The testimony should have been excluded. Under the single averment it enabled her to recover under either fact,—that of being a lessee, or of being an employe of the lessee; and the law of recovery is in the two cases, often at least, quite different, and must have been so in this case. With the status of the plaintiff settled as to the contract,—that is, that she was one of the lessees,—we may better consider the question as to her right to recover under the facts.

The parties are also somewhat in dispute as to the duties of the attaches on the stage furnished by the defendants. It seems to be the thought of appellee that it was their duty to see to the details of lighting the stage where the injury occurred and other details, and that their negligence in this respect would be a basis of recovery against the defendants. Appellee supports her conclusion of fact by a reference to the testimony of one Duncan, of the firm of Duncan & Waller, the firm being manager of the opera house for defendants in letting or leasing it. The contract being destroyed, Duncan testified as to its terms; and, after stating the attaches of the house that were included in the contract, he spoke of Seward, and said: "He was stage carpenter of the house, and had full charge of everything." But that is not all the witness said. He added that Seward's duties were "to act under the instructions of the stage manager or property man." The plain and only legitimate inference from the record in this respect is that Seward had

control of or supervision over the men furnished by defendants, and that, as to all matters pertaining to the stage, he exercised this control or supervision under the instructions of the stage manager.    This fact is so apparent from the record that the court might well have stated it as a conclusion to the jury.    The record also places another fact equally beyond dispute, which is that the stage manager had control over the arrange- ment of the stage in all particulars  essential to the rendering of the comedy, including scenery and lights. It does not appear that the facilities for lighting were not adequate, nor does it appear that the attaches neglected to do the bidding of the stage manager in any particular.

We may now inquire as to the liability of defendants for negligence in the construction of the stage, by mak- ing therein the trapdoor.    This door was plainly visible when the house was let to the company.    There is no claim of any concealments, nor that the house was not in the condition called for by the lease or contract.    It is said that the plaintiff did not know of the door.    But that is not the fault of the defendants.    Whoever acted for the company in secur- ing the house did know or could have known of it, and the fault, if any there be, because of her not knowing, is that of the company.    The renting of the theater in that condition was the free act of the company.    It was as conclusively bound by the known conditions of the stage as if it had been of its own construction.    Of course, we are not speaking except as to the parties to the contract.    No other question is involved under the pleadings.    We have carefully examined every author- ity cited, and many others, and have found no parallel case.    We are referred to *Joyce v. Martin*, 10 Atl. Rep. R. I.) 620; *Clifford v. Cotton Mills*, 15 N. E. Rep. (Mass.) 84; *Swords v. Edgar*, 59 N. Y. 28; *Dalay v. Savage*, 145 Mass. 38, 12 N. E. Rep. 841.    It will be seen that all

involve, not the right of a lessee to recover, but the right of a third party, and even then under facts unlike those of this case.

We think that it also appears affirmatively from the record that there was no negligence in the construction of the stage. The court held that, as a matter of law, if the opening in the stage was provided with a door which could have been closed, there was no negligence in failing to provide a rail or guard in addition to the door, and that in such a case there could be negligence only in failing to provide sufficient light. The jury returned this special finding: "Was the stairway provided with a door which could have been closed? Ans. We believe that at the time of the accident there was a trapdoor, but open, and we are of the opinion that, from the fact that said trapdoor had not been closed for a long time previous to the accident, it was not in good condition to close." No other fact supports the finding. The company had used the stage for six nights, and each day, with the door open, and no one attempted to close it, nor asked that it be closed; nor does it appear that there was even a thought that it could not be closed. It appears that it was nearly always open, but there is an affirmative showing that it could be closed. The opinion expressed by the jury, based on the one fact, is not entitled to the legal effect of a special finding. There was surely a door; surely evidence that it could be closed; and surely none that it could not be. A finding against such a condition of the record is of no moment. Taking the law of the case as given, that, if the opening was provided with a door that could be closed, there was no negligence in the construction, and that branch of the case seems settled, and we may pass to the question of negligence in failing to provide sufficient lights.

There is a dispute as to how much light there was at the time of the accident. The jury found that, in

its opinion, there was not sufficient light on that part of the stage. There is no finding, nor does it in any way appear, that there was not the means for producing sufficient light. Nor does it appear but that all the light was furnished that the company wanted. The stage manager knew, as we may assume, the movements, and how they were to be made, and the necessary stage conditions in order to properly make them. It seems to have been the thought of the district court, as to the opening in the floor,—and we think it correct,—that, if there was a door that could be closed, and the company did not use it, it was its own fault, and the defendants are not chargeable with negligence. The same rule is applicable to the lighting. The means were at hand,—at least, all that defendants agreed to furnish; and, if the company did not use the means, it is the fault of the company, and not of the defendants. The controlling facts in this case are not in dispute, and they clearly show that there is no basis for a recovery. The court should have directed a verdict for the defendants.—*Reversed.*