M. A. Morse, Appellant, v. Nancy Y. Houghton.

Landlord and tenant: DEFECTIVE PREMISES: INJURY TO TENANT: EVIDENCE.  A landlord is not liable to a tenant for alleged injuries resulting from defective construction of the premises, where there was no concealment or misrepresentation concerning the same at the time of the lease; but where there was a stairway used by several tenants of the building, which remained in control of the landlord, he was bound to keep it in repair, and if he failed to do so and a tenant was injured in consequence of such neglect he

was liable therefor. In the instant case plaintiff, a tenant, was injured by falling upon ice at the foot of an outside stairway to the building, used in common with other tenants and under the control of the landlord, and the questions of whether the proximate cause of the injury was the accumulation of the ice, and whether defendant had known of defects in the water pipes, from which the water was discharged onto the steps and froze, for such length of time as to require him in the exercise of reasonable care to remedy the same, were for the jury.

*Appeal from Polk District Court.*—Hon. Jas. A. Hewitt, Judge.

Monday, June 10, 1912.

Action for damages resulted in a directed verdict for defendant, and judgment thereon. The plaintiff appeals.— *Affirmed.*

*S. B. Allen* and *E. D. Perry*, for appellant.

*J. M. Parsons*, for appellee.

Ladd, J.—The defendant owns a two-story brick building at the northwest corner of Cottage Grove avenue and Nineteenth street, in Des Moines. Entrance to the upper story is by a stairway from Cottage Grove avenue on the south, from the top of which a hallway extends to the north, with four rooms on each side. At the north end of this hallway was a door opening onto a covered landing, from which an outside stairway extended along the end of the building toward the east to the ground. On the outside of this stairway was a railing; about two and one-half feet high, with boards extending parallel therewith part of the way, fastened to the posts and spindles the rest of the way. A roof of boards and tar paper, with a board next to it, covered the stairs, except the last two steps; the space between the board and railing being open. The plaintiff oc-

cupied a room in the second story as tenant, and the other rooms were also rented to different persons.   These rooms were heated by stoves, and the tenants carried ashes and refuse out by way, of the back stairway, and necessary coal up from bins below. · On December 5, 1909, at about 6 o'clock in the afternoon, in going down the back stairway to empty some ashes, the plaintiff, in the manner hereinafter described, caught her heel when she reached the bottom step and fell, sustaining serious injuries.   In this action she claims damages, alleging her own freedom from negligence, and that the covering of the stairway was negligently constructed, as well as the spouting, and, by way: of an amendment, "that the spouting at the north end of the said building was permitted to get out of repair, so that the water ran therefrom upon the cover to said stairway, and the covering to said stairway was permitted to get out of repair, so that the water thrown thereon from the aforesaid spouting ran down between the covering to said stairway and the building upon the steps where plaintiff was injured; that the said downspout was permitted to get out of repair by defendant herein, so that the said water, which was concentrated at or near the steps where plaintiff was injured, gushed out of said downspout upon the said steps where plaintiff was injured and froze thereon; and the spout at the end of the cover to the stairway was also permitted by the defendant to get out of repair, and because thereof the water ran therefrom upon the steps of the said stairway where plaintiff was injured."   The answer was a general denial.

At the conclusion of the introduction of evidence in behalf of plaintiff, a motion to direct the jury to return a verdict for defendant was sustained.   The grounds of this motion were (1) that no actionable negligence of defendant had been shown; (2) that the premises, in the respects complained of, were in the same condition as when plaintiff became a tenant; (3) that plaintiff "was injured by reason of

ice accumulating on the lower steps of the stairway and by slipping thereon, and that such had been the condition during the cold weather, and during all rainy times in cold weather, for more than two years previous to that, and that the plaintiff occupied the premises with the knowledge of that, and with knowledge of the means of egress and ingress to the premises''; (4) that defendant was not shown to have done anything which contributed to making the premises more dangerous than when plaintiff became a tenant; and (5) that plaintiff was a tenant at will from month to month, and could have surrendered the leased room at any time, and in staying elected to continue with conditions as they were. The court, in ruling on the motion, indicated as reasons for directing a verdict that it did not appear (1) that ice on the steps was the cause of plaintiff's fall; (2) nor that the accumulation of ice, if any, was caused by the leaking of a pipe or pipes; (3) nor that defendant had notice of the condition of the step prior to the injury.

It will be observed that assumption of risk was not pleaded as a defense, and that contributory negligence was not made a ground of the motion to direct a verdict. Neither of these was referred to in the court's ruling, and, though argued by appellant, requires no attention.

Nothing is claimed because of the alleged negligent construction, and, of course, could not be, as conditions were in no wise concealed from nor misrepresented to the tenant in leasing the rooms. *Boyer v. Commercial Bldg. Inv. Co.*, 110 Iowa, 491; 24 Cyc. 1047. But, as the stairway was made use of by the several tenants, this remained in the control of the defendant, and she was bound to keep the same in reasonable repair; if she negligently failed so to do, and as a consequence of such failure plaintiff was injured, liability therefor attached. *Burner v. Higman & Skinner Co.*, 127 Iowa, 580; *Peil v. Reinhart*, 127 N. Y. 381, (27 N. E. 1077, 12 L. R. A. 843). *Watkins v. Goodall*, 138 Mass. 533; 24 Cyc. 1116; 18 Am. & Eng. Ency. Law, 220.

That the law is as stated is not questioned, and was so regarded by the trial court in directing a verdict; and we have only to determine from an examination of the evidence whether defendant was delinquent in the matter of repairs, and the injury resulted therefrom as a natural consequence. The roof over the stairway was of boards and tar paper, leaving the two steps at the bottom uncovered. The evidence tended to show that a gutter and some pipes had become out of repair since plaintiff became a tenant in August, 1907.

She testified that:

At the east end of the roof there was a gutter, but it was not connected; and there was a pipe run from that to the downspout, . . . and coming down from that was a round tin pipe, which went over to the downspout at the corner of the building; that afterwards the downspout bursted, and defendant had it run under the sidewalk into an earthen pipe; that the pipe at the east end of the stairway had leaked for some time; and that the husband of defendant, who saw to making repairs, promised repeatedly to have same mended, and when he did the leak was not stopped, and the water came out on the steps just the same. . . . There was a little spouting at the east end of the porch (over the stairway) ; but it didn't connect in some way, *and let the water come down on the steps.* When I first went there, there was a tiling in this downspout. That froze and broke. Mr. Houghton repaired that, or repaired at it, and took a piece of tin and fixed it, and had a wire around it— you could move it up and down—and the water used to spout out that way and over onto the steps, out between the tiling; it didn't fit in. It was in that condition when I was hurt. It didn't do that when I first went there. *The water run down between the porch and the building and onto the step.* I don't think it was in that condition when I went there. *The spout at the east end of the top to the stairway was in a leaky condition; right up in there where it should have been fastened, it wasn't fastened at all.* That was not there to my knowledge when I went there. The water came down from the roof on the porch. *It went in there and didn't fit,* and down at that place down by the steps—I mean the down-

spout. He fixed that place, after being asked to, the spring before I was hurt, but left it in the same condition. It leaked just the same, and was never corrected.

On December 5, 1909, at 6 o'clock in the afternoon, she;

Was going down the back stairway to empty my ashes. I had them in the ash pan that belonged to the stove. I put on a new pair of rubbers, my red shawl, my sunbonnet, my mittens, and took up my ashes and walked out; started down the back stairway. I had my ashes in my right hand, and left hand on the railing. I went down step by step, and when I got to the bottom of the steps something caught my foot. My foot slipped, caught my heel, and I held onto the railing then as long as I could, and I fell and broke my leg, and I slipped down and went over into the sidewalk that belongs to the private alley. I could not see what I fell on. *I could feel that ball of ice, or whatever it was caught my heel.* I had rubber heels on my shoes. It caught my heel of my foot and pulled it right backwards and sprained my ankle. *This ice was down on the bottom, or next to the bottom step—down where that water accumulated.* I fell right on the place where my foot caught. My foot pulled right back, and I held on as long as I could; and when I let go, then it let go of my foot, and I fell. *I fell where this ball of ice was.* It pulled my foot right back.

She had observed that the ice accumulated there every time it rained and froze, but not when she first occupied the room. Before going down that evening, she knew the steps had ice on them, but not the accumulation she found. She proceeded:

I think it had rained that day, sleeted and snowed. It was a stormy day. Saturday it was kind of drizzling, misting more like. It must have continued Sunday, because I know it sleeted. There was always ice there when it rained, or any kind of sleet. . . . This water that accumulated in ice that formed the ridge or chunk I fell on came from that porch right there where that little space was, and didn't fit in, and down where that little pipe that went into the drain that had a little wire on it. When we had a real hard rain, it would come down there and fly up like that—we used

to call it a little fountain—and go on the steps right down there on the pavement.

She testified further, on cross-examination, that;

This gutter came to the east end of the stairway roof, that is the gutter from the roof.  That is the spouting.  I don't know whether it was an open gutter or not.  There was a gutter there.  So far as I know, I never saw it changed. It was an ordinary gutter, raised at the north end and running off south towards the building, and coming down from that was a round tin pipe.  It went down to the corner of the building.  It sort of went off southeast and struck a big pipe. He put it in the spring after I came there.  I came there in 1907.  Q.  Did it get colder Saturday night?  A.  I don't remember whether it did; I know it did Sunday.  I slept so sound Saturday night that I don't remember.  Q.  You slept so sound you do not know whether it got colder or not, but you know it was colder Sunday?  A.  Yes.  Q.  And you know it was colder during the day?  A.  I didn't pay no attention to whether it was colder.  Q.  Which way was the wind from that day?  A.  I don't remember.  Q.  You couldn't remember at all?  A.  No; but I don't think it was from the north.  Q.  Do you think it was from the east?  A. If I was just thinking, I should say it was from the south. . . . I cleaned off the steps myself Saturday.  Took my broom handle and cleaned them.

Another witness testified that ''when the water came down the downspout it always left a lot of ice on the lower steps there.  I cannot say for sure where it came from, because I did not pay a great deal of attention to it; but some of the water seemed to come from that spout, and the rest seemed to come from between the wall and the building; it leaked down.  There was an open place between the wall and the building, where the water came on the stairs and ran down until it got to the street.  The ice accumulated most about the two or three lower steps.''

This recital of the evidence leaves no doubt but that it was sufficient to carry the issue to the jury as to whether

the injury was the proximate result of the accumulation of ice on the steps. So, too, was the issue for the jury as to whether defendant had known of the defect in the water pipe or pipes long enough, so that these might, in the exercise of ordinary care, have been repaired previous to the injury. Plaintiff testified that she had repeatedly directed Houghton's attention to the alleged defects when paying the monthly rental, and that, though promising repair, nothing was done, and had also spoken of the matter to defendant. That she (defendant) may not have been aware of the accumulation of ice on the step, if such there was—that is, of the consequence of her alleged negligence—is not material. See 24 Cyc. 1120; 18 Am. & Eng. Ency. Law (2d Ed.) 222. The real difficulty in the case is to determine whether the ice causing the injury accumulated as a consequence of the exposure of the steps to the drizzling and the sleet of Saturday and Sunday, after plaintiff had cleaned these, or whether water had escaped from the pipe because of being out of repair and frozen into the ice on which plaintiff slipped. If, owing to the storm, any water was running through the pipes at that time of year, the record is silent concerning it, and certainly the storm was not so described that this may reasonably be inferred therefrom. Ordinarily at that season of the year the thermometer is likely to be at or below the freezing point, and water not likely to be flowing from the eaves when sleet is forming. That the steps were exposed to the weather explains the conditions of the stairway, and there is but a scintilla of evidence, in the nature of a conclusion or opinion of the witness, directly attributing it to the alleged defect in the pipe. We are not inclined to interfere with the ruling that this was not sufficient to carry the case to the jury. *Affirmed.*