Katherine Durkin, Appellee, v. Jacob A. Lewitz and Dorothy Lewitz, Defendants. Dorothy Lewitz, Appellant.

Gen. No. 46,283.

 Opinion filed October 19, 1954. Rehearing denied November 16, 1954. Released for publication January 4, 1955.

SEARS & STREIT, of Chicago, for appellant; BARNABAS F. SEARS, DAVID H. ARMSTRONG, and LLOYD J. TYLER, JR., all of Chicago, of counsel.

MATTHEW STEINBERG, and FRED POLACEK, both of Chicago, for appellee; WILLIAM C. WINES, and ABRAHAM MILLER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Katherine Durkin, plaintiff, was a household employee of the tenants of a second-floor apartment in a three-story, six-flat building owned by defendants. On December 13, 1950, plaintiff in the performance of her duties fell on some loose ice on the second-floor landing, a part of the building under the control of the landlord for the common use of tenants, and suffered severe injuries. Trial by jury resulted in a verdict of $18,000, on which judgment was entered. Subsequent to the filing of this lawsuit, Jacob Lewitz died and the case proceeded against the remaining defendant.

Plaintiff's theory is that the accumulation of ice on which she fell was due to lessor's negligence in failing to repair a defective roof gutter through which water leaked onto the second-floor landing. To support this, Mrs. Shapiro, plaintiff's employer, testified that she had seen the holes in the gutter; that water came through the gutter onto the second-floor landing, collected there and froze; that for several days prior to the accident the ice on the landing was about a half-inch thick; that two or three times prior to the accident she had reported the condition of the gutter to defendant's daughter who with her husband lived on the

483

premises and to whom Mrs. Shapiro paid rent, but nothing was done about it. Defendant produced no witnesses to controvert directly any of the testimony offered by plaintiff. It is our conclusion that the testimony amply sustains plaintiff's position. We will presently consider defendant's contention that a verdict should have been directed because testimony on plaintiff's behalf raised only an inference that ice was formed by water leaking from the roof gutter and that this inference was not of sufficient weight to support the finding of the jury.

Defendant's principal argument is directed to the proposition that negligence cannot be predicated upon failure to remove snow and ice. There are many decisions in Illinois in cases in which municipalities or adjoining property owners have been charged with negligence for failure to remove snow and ice accumulated on public ways. There are no Supreme Court cases and only two or three Appellate Court cases in which a landlord has been charged with violation of a similar duty. In this climate, whenever negligence is sought to be charged on failure to remove snow and ice, there immediately arises in the mind pictures of great snowstorms creating emergency conditions which have at times made it necessary to mobilize the entire citizenry in order to make paths and clear streets for traffic. It was natural, therefore, that in such cases courts would focus their attention on the difficulties involved in performing a task of this character, rather than on the nature of the particular relationship which gave rise to the alleged obligation. Hence it is that opinions in these cases holding that neither a municipality nor the adjacent property owners are liable contain language which appears broad enough to cover all relationships and all situations, including that of landlord and tenant. *Riccitelli v. Sternfeld,* 1 Ill.2d 133, 135, 115 N.E.2d 288, 289 (1953), affirming 349 Ill. App. 63,

65; *Calhoun v. Corning,* 328 Ill. App. 493, 66 N.E.2d 303 (1946); *Miklaszewski v. City of Chicago,* 194 Ill. App. 614 (1915). This exemption of a municipality and adjoining property owner from liability for injuries resulting from the natural accumulation of snow and ice is the general rule in Illinois, but exceptions are made where some other act of negligence contributes to the condition, as where laundry bags dragged across a snow-covered sidewalk created a slippery passage upon which a passerby fell (*King v. Swanson,* 216 Ill. App. 294, 297 (1919)); where a city pipe ejected water which froze on a sidewalk (*Hubbard v. City of Wood River,* 244 Ill. App. 414, 417 (1927)); where an abutting property owner maintained a discharging drain spout (*Loyd v. City of East St. Louis,* 235 Ill. App. 353, 357 (1925)), and where the negligent accumulation of ice was caused by flooding a skating pond adjacent to a sidewalk (*Graham v. City of Chicago,* 346 Ill. 638, 178 N. E. 911 (1931)).

Defendant relies heavily on language used in *Riccitelli v. Sternfeld, supra,* which involved the liability of a property owner to those using the sidewalk adjoining his property. There, after a heavy snowstorm, the defendant undertook to clear his own premises and to make a pathway on the sidewalk. It was alleged that in so doing he piled the snow in a heap which melted and formed ice on the sidewalk. It was contended that this was negligence and that the sidewalk would have been safer without the path and the adjoining heap of snow and ice. In reversing a judgment for plaintiff, we said we had to start with the proposition that a property owner is under no obligation to clear the sidewalks adjoining his premises, and that the defendant could be held liable only for the commission of a positive negligent act which enhanced the danger existing from natural causes. In the instant case, we must start with a different premise, that is, that the landlord owed

a duty to use reasonable care to maintain the particular premises involved in a reasonably safe condition and to inquire whether his failure to remove snow and ice under the circumstances in question constituted a violation of that duty.

Precedents and authorities on this question are divided between those which have adhered more strictly to the common-law conception of the lessor-lessee relationship and those which have sought to make the law conform with the reasonable requirements of current custom and usage in land tenure and occupancy. The common law regarded a lease such as the one in question as a grant of an estate for years, with respect to which the lessee had the exclusive right and exclusive responsibility. The lessor was under no obligation to repair or to maintain passageways or other premises used in common by all tenants, nor did he covenant that the premises were fit for the purposes for which they were leased. *Viterbo v. Friedlander,* 120 U. S. 707 (1887); *Fowler v. Bott,* 6 Mass. 63 (1809); *Bowe v. Hunking,* 135 Mass. 380 (1883). The civil law, on the other hand, seems to have had a concept of the relationship much more in keeping with our times. It regarded a lease for use as a transfer of the use and enjoyment of property, and hence a landlord was bound, without any express covenant, to keep the property in repair and otherwise fit for use for the purposes leased. *Viterbo v. Friedlander, supra,* The common-law conception, strictly applied, could hardly prove workable in these days of 40-story office buildings or such an apartment building as that described in *Kushner v. Lawton,* 351 Ill. App. 422 (1953), which has 740 apartments and a population of about 2,000. Illinois, while adopting the common-law rule, has made so many exceptions that like the puppy's tail, it is doubtful whether what is left is longer than what was excised. For example, landlords are held liable for latent de-

fects, *Sunasack v. Morey,* 196 Ill. 569, 63 N. E. 1039 (1902); for defects which constitute violations of ordinances, *Landgraf v. Kuh,* 188 Ill. 484, 59 N. E. 501 (1900); *Klonowski v. Crescent Paper Box Mfg. Co.,* 217 Ill. App. 150 (1920); and, in an exception most pertinent to the instant case, for injuries caused by negligence in failing to use due care to keep those parts of the premises used in common by tenants in reasonably safe condition. *Hartford Deposit Co. v. Sollitt,* 172 Ill. 222, 50 N. E. 178 (1898); *Murphy v. Illinois State Trust Co.,* 375 Ill. 310, 31 N.E.2d 305 (1940). But, contends defendant, this general obligation of a landlord does not apply to the removal of snow and ice.

The decisions with respect to removal of snow and ice involving the landlord-tenant relationship upon which defendant relies are *Blumberg v. Baird,* 319 Ill. App. 642, 49 N.E.2d 745 (1943), and *Cronin v. Brownlie,* 348 Ill. App. 448, 456 (109 N.E.2d 352 (1952)). In *Blumberg v. Baird, supra,* liability was predicated on the landlord's failure to remove snow and ice from steps. The defendant proved that on the day in question, because of continuous snow, rain, and sleet, the janitor had cleaned the stairs three or four times, as late as an hour and a half before the accident, and had also scattered ashes on the steps. The court said the "evidence indicates that it would have been impossible to keep the back stairway entirely clear during the continuous snow and rain accompanied by sub-freezing temperature." It was upon that state of facts that the court made its decision. We do not regard that case as authority for defendant's position in the instant case.

The general language used in *Cronin v. Brownlie, supra,* in its approval of what is known as the Massachusetts rule, holding that there is no liability with respect to the removal of snow and ice, presents a somewhat different situation. It is true, as stated in that case, that the authorities are in conflict, and that

487

the Massachusetts rule is considered by some to be the majority rule, although to us the authorities appear about equally divided. The following cases support the Massachusetts rule: *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357 (1883); *Purcell v. English,* 86 Ind. 34 (1882); *Rosenberg v. Chapman Nat. Bank,* 126 Me. 403, 139 Atl. 82 (1927); *Oerter v. Ziegler,* 59 Wash. 421, 109 Pac. 1058 (1910); *Morse v. Houghton,* 158 Iowa 279, 136 N. W. 675 (1912); *Shindelbeck v. Moon,* 32 Ohio St. 264 (1877); *Rankin v. Ittner Realty Co.,* 242 N. Y. 339, 151 N. E. 641 (1926). Several cases cited as supposed authority for following the Massachusetts decisions do not, in fact, support that proposition. (*Burke v. O'Neil,* 192 Minn. 492, 257 N. W. 81 (1934), landlord not liable for water overflowing from street catch basin onto private walk; *Atwill v. Blatz,* 118 Wis. 226, 95 N. W. 99 (1903), tenant liable for snow allowed to accumulate on roof which fell on passing pedestrian; *Lumley v. Backus Mfg. Co.,* 73 Fed. 767 (1896), tenant fell on public sidewalk in front of building.) In *Woods v. Naumkeag Steam Cotton Co., supra,* the leading case, the court held flatly that there was no duty on the part of a landlord to remove ice and snow which had naturally accumulated on steps; *that, the court held, was the tenant's duty if she desired to use the steps.* The court did not provide any rationale for this abrupt conclusion of law. It is obviously a rigid adherence to the common-law concept of the lessor-lessee relationship. The difference between Illinois and Massachusetts in this respect is high-lighted by their respective measures of a landlord's obligation as to premises used in common. The Illinois rule requires a lessor to use reasonable care to keep common areas reasonably safe. *Murphy v. Illinois State Trust Co.,* 375 Ill. 310, 31 N.E.2d 305 (1940), citing *Shoninger Co. v. Mann,* 219 Ill. 242, 76 N. E. 354 (1906), and *Hartford Deposit Co. v. Sollitt,* 172 Ill. 222, 50 N. E. 178 (1898). Massachu-

setts holds him only to a maintenance of the condition in which they existed at the time of the letting. *Cerricola v. Darena,* 266 Mass. 267, 165 N. E. 124 (1929); *Faxon v. Butler,* 206 Mass. 500, 92 N. E. 707 (1910).

In *Purcell v. English,* 86 Ind. 34 (1882), the court justified its adoption of the Massachusetts rule in the following language:

"If any other rule is adopted [that the lessor had no liability for failure to remove snow and ice], then the owner is charged with the duty of watching steps leading to every part of the premises, and of keeping them free from all temporary obstructions; for, let it once be granted that the landlord is liable for obstructions or defects not permanent and not growing out of the character of the structure, it will be impossible to draw any line, and he must be held accountable for all obstructions and defects, no matter how transient their character."

These apprehensions set forth in the only case which appears to have stated the principles upon which the Massachusetts rule is based are presently discussed in connection with the statement of the contrary rule (sometimes called the Connecticut rule) in *Goodman v. Corn Exchange Nat. Bank,* 331 Pa. 587, 200 Atl. 642 (1938).

The Connecticut rule is supported by the following cases: *Reardon v. Shimelman,* 102 Conn. 383, 128 Atl. 705 (1925); *United Shoe Machinery Corp. v. Paine,* 26 F.2d 594 (1 C.A. 1928); *Robinson v. Belmont-Buckingham Holding Co.,* 94 Colo. 534, 31 P.2d 918 (1934); *Massor v. Yates,* 137 Ore. 569, 3 P.2d 784 (1931); *Thompson v. Resnik,* 85 N. H. 413, 159 Atl. 355 (1932). See also *Goodman v. Corn Exchange National Bank & Trust Co.,* 331 Pa. 587, 200 Atl. 642 (1938); *Pessagno v. Euclid Inv. Co.,* 72 App. D. C. 141, 112 F.2d 577 (1940). In *Reardon v. Shimelman, supra,* the leading

case, the accident occurred on a portion of the premises used in common by tenants in a building. There, the court started with the proposition that a landlord was obligated to use reasonable care to keep such premises in a reasonably safe condition and that this duty covered an obligation to remove snow and ice. The court saw no reason why a danger which arose from the fall of snow or freezing of ice should afford any ground of distinction. "To set apart this particular source of danger is to create a distinction without a sound difference. 1 Tiffany, Landlord & Tenant, p. 633." In considering the Massachusetts rule the court said: "That rule has unquestionably become the law of Massachusetts, although one searches its decisions in vain for any attempt to justify it upon grounds of principle."

Prosser, whose contemporary work on torts has come to have an increasingly persuasive influence, says that with respect to common approaches and passages, tenants have a permissive use, do not occupy them, and the responsibility for their condition remains upon the lessor, and that he therefore has an affirmative obligation to exercise reasonable care to inspect and repair them. "According to the prevailing view the landlord must guard against even conditions of purely natural origin, such as snow and ice on the steps; . . ." Prosser on Torts, p. 657.

▮▮▮ The essential difference between the two lines of cases to be gleaned from a study of the opinions is that in the Massachusetts line, a close adherence to the strict common-law conception of the duty of a landlord is followed, and snow and ice are considered temporary obstructions for which a landlord is not held liable, and in those which follow the Connecticut line the obligation of the landlord to use reasonable care with respect to premises used in common is adhered to and the obligation with respect to snow and

490

ice is measured by that duty. Illinois has firmly and decisively fixed upon the landlord the duty to use reasonable care with respect to premises used in common, and its place logically and sensibly belongs in the so-called Connecticut line. That rule was interpreted in *Goodman v. Corn Exchange National Bank & Trust Co.*, 331 Pa. 587, 200 Atl. 642 (1938) as follows:

"It may be stated as a general rule that there is no absolute duty to keep outside steps free from ice or snow at all times. Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible. It is only when the owner or possessor having a duty to remove snow and ice, improperly permits an accumulation thereof to remain after a reasonable length of time for removal has elapsed, that liability may arise for the unsafe and dangerous condition thereby created."

The principle as thus stated should allay all misapprehensions expressed by the court in *Purcell v. English, supra,* and other cases which have followed the Massachusetts rule.

Even in those cases which follow the Massachusetts rule, certain exceptions are made. In *Watkins v. Goodall,* 138 Mass. 533 (1885), it was held that where water was artificially discharged upon a platform, so as to make it dangerous when frozen, the lessor was liable. In the leading case to which we have referred, *Woods v. Naumkeag Steam Cotton Co., supra,* the court expressly stated that the landlord was liable for defects in construction and for want of repair of passageways used in common. The court confined the exemption from liability to the removal of snow "which naturally accumulated." As we have said, it is our con-

clusion that the evidence in the instant case was ample to support submission to the jury of the issue of fact with respect to the leaks in the gutter and whether these leaks were responsible for the accumulation of ice on the landing. It is our view that the circumstances of this case bring it not only within the exceptions covered by the Illinois decisions to which we have heretofore referred, but to exceptions made in cases which follow the Massachusetts rule.

Our conclusion may appear to be somewhat at variance with *Cronin v. Brownlie, supra,* but if we examine the facts in that case, certain distinctions will appear. There, the injury occurred February 5, and the evidence showed that snow was shoveled February 3rd and 4th. In the instant case no effort was made, so far as appears from the evidence, to keep the stairs and landings free of snow and ice, although the snow had lain there for seven days and defendant had been notified several times during the winter of the condition which existed. The injuries complained of in the *Cronin* case were held by the reviewing court to have resulted from natural causes, while in the instant case the evidence is that the ice came from a defective gutter negligently maintained. It appears to us that what the court decided in *Cronin v. Brownlie* was that a landlord could not be expected to go out after each drizzle or fall of snow and remove the snow and ice which may have accumulated, and this is in keeping with the rule which we approve.

 Defendant argues that the only witness for plaintiff in this respect did not testify that water dripped from the gutter onto the landing, but only that there were holes in the gutter and that ice on the second-floor landing came from water that was coming down from the roof; that this inference was rebutted by other facts; and that it was much more probable that the ice on the landing came from snow on the open

landing of the stairway than from leaks in the gutter. Defendant also relies on testimony of a climatologist that the temperatures on December 13 and for a period of time prior thereto did not rise above the freezing point, except on December 7. These temperatures were taken at Chicago Midway Airport. We can, of course, take judicial notice that there is a substantial difference in the temperatures taken at the airport and those taken at other places in the city. It by no means follows that a particular point such as a roof, with the sun shining on it, would not be above the freezing point sufficiently to melt the snow thereon, even though at another point in the city the temperature was below freezing. The testimony on behalf of plaintiff, given by her employer, is definite that the water leaked from the gutter and collected on the landing, and while defendant draws some comfort from her testimony on cross-examination, it nevertheless left a clear issue for the jury to decide. Defendant cites *Morse v. Houghton,* 158 Iowa 279, 286, 136 N. W. 675 (1912), as a case closely in point. The facts in that case were, indeed, somewhat similar to those in the instant case. There the trial court directed a verdict and the Supreme Court stated that it was "not inclined to interfere with the ruling." While this is treated by courts as a question of law, it involves a consideration of facts and a determination as to whether they have probative value. In such a case, the decision of a court of another jurisdiction can be of little weight as a precedent. The judge in the instant case, with a long and respected record of trial experience, concluded that there was ample evidence to warrant a submission of the issue to the jury, and we concur.

 Defendant argues that the standard of care required of plaintiff is the same as that required of defendant and that, therefore, since plaintiff knew of the condition of the stairway and landing, she was

guilty of contributory negligence. This is the equivalent of arguing that the use by plaintiff of the premises in its dangerous condition was *per se* negligence. It is not *per se* negligence for a person to go upon dangerous premises. *Village of Clayton v. Brooks*, 150 Ill. 97, 105, 37 N. E. 574 (1894); *Illinois Cent. R. Co. v. Anderson*, 184 Ill. 294, 305, 56 N. E. 331 (1900); and *City of Mattoon v. Faller*, 217 Ill. 273, 283, 75 N. E. 387 (1905); *Stevenson v. Byrne*, 3 Ill.App.2d 43, 120 N.E.2d 377. To be guilty of contributory negligence as a matter of law, it must appear that taking the evidence as presented by plaintiff and the reasonable inferences that may be drawn therefrom in her favor, all reasonable minds would agree that plaintiff was guilty of contributory negligence. *Yess v. Yess*, 255 Ill. 414, 99 N. E. 687 (1912); *McCune v. Reynolds*, 288 Ill. 188, 123 N. E. 317 (1919); *Roadruck v. Schultz*, 333 Ill. App. 476, 77 N.E.2d 874 (1948); *Blair v. Blair*, 341 Ill. App. 93, 93 N.E.2d 95 (1950); *Grib v. Chicago Transit Authority*, 343 Ill. App. 263, 98 N.E.2d 400 (1951). We do not find that to be the case here.

 Defendant argues that the court should have granted a new trial because of prejudicial remarks made by plaintiff's counsel. This is based on counsel's reference to the failure of defendant to call certain prospective witnesses who apparently were in the courtroom at defendant's request. The purpose was to suggest to the jury that they were not called because their testimony would have been adverse. Questioning upon this point was brief although persisted in to some extent after the court had sustained an objection to it. It was also argued that there were certain improprieties in counsel's argument, in that he threw the weight of his personal opinion into his argument to the jury and in other respects made improper arguments. The questioning and argument were improper, yet the error was mild in substance compared with other digres-

sions from the straight and narrow path in the presentation of personal injury cases. In this case, where the substantial facts were not seriously controverted and the issue was not close, we have concluded to overlook the errors thus committed. They are errors which have a long and dishonorable tradition in jury trials. However, in this day when courts are overwhelmed with this type of practice and three or four years is required to bring a personal injury case to trial, it behooves those who practice in that branch of the profession to direct their attention with rigid self-discipline to the fair presentation of their case, to the elimination of all side-play, and to the avoidance of the extreme either in the presentation of evidence or in argument. This is no longer a matter of professional idealism; it is a necessity, if the work of the court is to be transacted in the public interest.

*Judgment affirmed.*

ROBSON, J., concurs.

TUOHY, J., took no part.