(No. 5386— ▮▮▮▮▮▮▮▮▮▮

MARGUERITE WHITE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 17, 1969.*

432

SEYMOUR SCHEFFRES AND SAMUEL ALLEN, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; MORTON L. ZASLAVSKY AND ETTA J. COLE, Assistant Attorneys General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of $10,000.00 for injuries suffered on January 31, 1965, when she fell on an icy sidewalk on the grounds of the Illinois State Training School for Boys. Claimant was employed as a foster mother by the City of Chicago, and had gone to the School for the purpose of visiting her foster son, Philip Swar.

The testimony showed that on the day in question claimant took a chartered Greyhound bus from the Chicago Loop, and was delivered to the gate of the School.

When the gates were opened, she walked on a long sidewalk from the gate to the administration building. The sidewalk was covered with two inches of snow and ice. After leaving the administration building she walked on another sidewalk to the cottage where her foster son was living. This sidewalk was clean. There was no snow or ice on it.

Claimant testified that she had visited her foster son the week before, on January 24, 1965, and there was a half inch of snow and a little bit of ice on the sidewalk leading from the gate to the administration building. The sidewalk from the administration building to the boy's cottage was clean on that day also.

After leaving the boy's cottage on January 31, 1965, claimant returned to the administration building to check out, and then entered the sidewalk to proceed to the gate. She was walking slowly, and fell about half way between the administration building and the gate.

Claimant further testified that she had been employed for eighteen years as a foster mother by the City of Chicago, Children's Division; that her duties were to take care of the children, as if they were her own; that Philip Swar was about three days old when he came into her care. She stated that she still had custody of Philip Swar when he went to St. Charles, and that he had been there about four months at the time of her accident. She would visit him once a week on Sundays. She earned $150.00 per month as a foster mother. After taking a chartered Greyhound bus to the Training School she had to go into the office at the gate to get a pass, which was the only way she could get in, wait until the gates were opened, and walk up a sidewalk, which had about two inches of ice and snow on the day in question.

Respondent contends that claimant is not entitled to a recovery because (1) she was a mere licensee on the premises of respondent; (2) that claimant has failed to establish that respondent did not exercise ordinary care to maintain its sidewalks; and (3) respondent is not liable for injuries resulting from the general slipperiness of streets and sidewalks due to natural causes.

Respondent argues that a licensee may be inferred where the object of the visit is the mere pleasure or benefit of the visitor, and the duty owed by one to a licensee is the duty not to injure him wilfully or wantonly.

Claimant contends as follows: that she was engaged in the business of the respondent, since she had served in the capacity of foster mother for about eighteen years, and had the duty to "care for, assist, give material support, comfort and advice to the foster son. By visiting Philip Swar, the foster son, almost every week, she was assisting in the work of respondent by giving counsel to the boy, and assuring him that someone did care for him. She, therefore, assisted the State in the rehabilitation process. As a public foster mother, claimant was an invitee, and entitled to all the rights of an invitee."

In the case of *Levy* vs. *State of Illinois,* 22 C.C.R. 694, 696, this Court specifically held:

"The fact that the State institutions have visitors' days, and encourage visits with patients would indicate that claimant was more than a 'licensee', and should be treated as an 'invitee'."

The Court must conclude that claimant was an invitee, and was entitled to have reasonable care and caution used to keep the premises reasonably safe for her use.

The next question to be resolved is whether respondent exercised reasonable care in maintaining its premises. The Departmental Report states in part: "On January 31, 1965, we had a high temperature of 17 degrees and a low temperature of -7 degrees. One and one-half inches of snow fell between the hours of 6:00 A.M. and 10:00 P.M., and four inches of snow had accumulated on the ground during this day. At the time of this alleged accident, we were recovering from a very serious ice storm." A letter from C. William Ruddell, Superintendent, states:

"At the time Mrs. White fell and injured herself, the Training School was just recuperating from a very serious ice storm, during which time the institution itself was considerably crippled in its operation due to the severity of the storm."

Respondent did not produce any witnesses at the time of the hearing. However, claimant introduced a copy of the U.S. weather reports for January, 1965, which showed that the ice storm, to which respondent was alluding, struck northern Illinois on January 23, 24, and 25.

Respondent cites several cases to the effect that respondent is not liable for injuries resulting from the natural accumulation of ice and snow on sidewalks. (*Strappelli* vs. *City of Chicago*, 371 Ill. 72; *Graham* vs. *City of Chicago*, 346 Ill. 638; *Ritgers* vs. *City of Gillespie*, 350 Ill. App. 485; *Cronin* vs. *Brownlie*, 348 Ill. App. 448.)

In the case of *Levy* vs. *State of Illinios*, 22 C.C.R. 694, the Court examined the majority and minority rules concerning liability for snow removal. It cited the case of *Durkin* vs. *Lewitz*, 3 Ill. App. 2d 481, 123 N.E. 2d 151. In that case the issue was whether a landlord had the duty to use reasonable care in the case of snow removal. The Court stated:

"Illinois has firmly and decisively fixed upon the landlord the duty to use reasonable care with respect to premises used in common, and its place logically and sensibly belongs in the so-called Connecticut line. That rule was interpreted in *Goodman* vs. *Corn Exchange National Bank & Trust Co.*, 1938, 331 Pa. 587,200 Atl. 642,643, as follows:

'It may be stated as a general rule that there is no absolute duty to keep outside steps free from ice and snow at all times. Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible. It is only when the owner or possessor, having a duty to remove snow and ice, improperly permits an accumulation thereof to remain after a reasonable length of time for removal has elapsed, that liability may arise for the unsafe and dangerous condition thereby created.' "

The Court also stated that the general rule in Illinois exempts municipalities and owners of adjoining property adjacent to the public way from liability for injuries resulting from the natural accumulation of ice and snow. None of the cases cited in support of the statement is in point.

The more recent case of *Sims* vs. *Block*, 236 N.E. 2d 572 wavers between both rules. It stated that, where the owner-landlords did make an effort to remove the snow from a parking lot, they became charged with the duty of exercising ordinary care in accomplishing the clearing of the lot.

In the *Levy* case, recovery was denied because respondent submitted evidence showing that it had shoveled the walks on the day of the snowfall, four days before the accident, and had, therefore, discharged its duty of ordinary care in the maintenance of its premises.

The most reasonable reconciliation of the rules set forth above would be to apply the test of whether respondent exercised reasonable care in maintaining its premises. Application of the *Sims* rule would leave one with the conclusion that, if claimant had fallen on a patch of ice on the cleaned sidewalk leading from the administration building to the cottage, she could recover, but, having fallen on a sidewalk where no effort was made to remove the ice and snow, she cannot recover.

The case of *Prater* vs. *Veach*, 35 Ill. App. 2d 61, 181 N.E. 2d at 741, 739, while not specifically concerned with ice and snow sets forth the following guide for the duty owed by the owner of land to an invitee.

"The owner of land is subject to liability for bodily harm or wrongful death to invitees resulting from natural or artificial conditions only if he knows of the condition and realizes that it involves an unreasonable risk to invitees, or permits them to remain on the

land without exercising reasonable care to make the conditions reasonably safe or to warn invitees of the condition and the risk involved therein."

In the instant case, respondent has presented no evidence to show that it made any attempt to remove the ice and snow from the sidewalk in question. Respondent submitted that it had no time to do this. However, the weather reports showed that six days had passed since the precipitation had fallen.

It is not reasonable for the State of Illinois to invite visitors, and provide as the only access route a long sidewalk covered with ice and snow. The risk of injury was clearly foreseeable. It would appear that six days was enough time to clear the walk, since other walks on the premises were in fact cleared. Respondent was negligent in its failure to use ordinary care towards its invitees.

After claimant fell, she was taken by ambulance to Delnor Hospital where she was x-rayed and treated. She stayed from Sunday until the following Thursday. Her arm was in a sling, and a collar was put around her neck. Dr. Richard Grayson attended her at the hospital. After she returned home she received treatment from Dr. Charles Lee Williams. He found that she could not close her right hand, had no grip, and her shoulder pained her constantly. He diagnosed her condition as periarthritis of the right shoulder with partial Volkmann's ischemic contracture over the right hand and forearm.

She was examined by respondent's doctor, John F. Gleason, on June 21, 1967. His finding was a well healed fracture of the greater tuberosity of the right humerus, and moderate restriction of motion of the right shoulder. He further found that the finger tips of the right hand lack one and one-half inches of touching the palm. Dr.

Gleason found that she was unable to grip large diameter objects with the injured hand, that there is decreased sensation over the right arm and forearm as compared with the left, and stated: "There is considerable limitation of motion in the metacarpal phalangeal joints and proximal and distal interphalangeal joints of all the fingers of the right hand."

Claimant testified that she did not receive any money from the City of Chicago after Philip Swar was in St. Charles, and that the last time she received a check was the month before the accident. Prior to her accident claimant had been a foster mother for a period of eighteen years, and was earning $150.00 per month until the month before the accident. She was born in 1906. Claimant stated that she was unable to continue as a foster mother or to obtain other work, because her hand could not close.

Claimant is hereby awarded the sum of $6,500.00.